UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| SALLY LANCE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:16-CV-527-HBG |
| ) | |
| NANCY A. BERRYHILL,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 20]. Now before the Court is Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 21 & 22] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 23 & 24]. Sally Lance ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

**I. PROCEDURAL HISTORY**

On February 8, 2013, Plaintiff filed an application for supplemental security income benefits pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et. seq.*, claiming a period of disability that began on that same date. [Tr. 13, 37-38, 187-94]. After her application

---

[1] During the pendency of this case, Nancy A. Berryhill replaced Acting Commissioner Carolyn W. Colvin. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the Defendant in this case.

was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 102-05]. A hearing was held on March 24, 2015. [Tr. 34-55]. On April 16, 2015, the ALJ found that Plaintiff was not disabled. [Tr. 13-28]. The Appeals Council denied Plaintiff's request for review [Tr.1-3], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on August 25, 2016, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant has not engaged in substantial gainful activity since February 8, 2013, the application date (20 CFR 416.971 *et seq*.).
>
> 2. The claimant has the following severe impairments: chronic obstructive pulmonary disease [("COPD")]; osteopenia, restless legs syndrome; orthostatic hypotension; depression (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that she can occasionally climb ramps, stairs, ladders, ropes, and scaffolds. The claimant can occasionally crouch, kneel, and crawl. She should avoid concentrated exposure to wetness or humidity, as well as fumes, odors, dust, and gases. The claimant is limited to work involving simple, routine, repetitive tasks, in which she should be allowed to be off-task 5 percent of the workday, in addition to normal breaks. She is limited to low-stress work, which is defined as having only occasional decision-making required and only occasional changes in the work setting. The claimant should have only occasional

interaction with the public and co-workers.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on May 26, 1962 and was 50 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963).

7. The claimant has limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since February 8, 2013, the date the application was filed (20 CFR 404.1520(f) and 416.920(f)).

[Tr. 15-28].

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV. DISABILITY ELIGIBILITY

"Disability" is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* at § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

4

> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. § 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. § 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Id.* The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

**V.     ANALYSIS**

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ failed to properly assess the opinion of treating physician Thomas R. Cox, M.D. [Doc. 22 at 13-17]. In addition, Plaintiff contends that her RFC for simple, routine, and repetitive tasks is inconsistent with her moderate limitations in concentration, persistence, and pace. [*Id.* at 18-20]. The Court will address each alleged error in turn.

5

### A. Medical Opinion of Thomas R. Cox, M.D.

Plaintiff submits that the ALJ provided no more than a conclusory statement that Dr. Cox's opinion is inconsistent with the medical evidence of record and further failed to provide "good reason" for the weight assigned to Dr. Cox's opinion.

Dr. Cox is Plaintiff's primary care physician and has treated her regularly since at least March 2000, for COPD, depression, restless legs syndrome, low blood pressure, and gastroesophageal reflux disease. [Tr. 274-75, 653]. On July 30, 2013, Dr. Cox completed a "Residual Functional Capacity Questionnaire," wherein he opined on Plaintiff's impairments and their functional effect. [Tr. 653-54]. Dr. Cox explained that Plaintiff's impairments have worsened over time, but she does experience partial control of her symptoms with medication. [*Id.*]. Plaintiff's symptoms include dyspnea with exertion, fatigue, hopelessness, leg pain, and chest pain, all of which constantly interfere with Plaintiff's attention and concentration. [*Id.*]. Dr. Cox concluded that Plaintiff has the following limitations: she can walk less than one city block without rest or significant pain; she can sit 30 minutes at one time and up to one hour in an eight-hour workday; she can stand or walk for 60 minutes at one time and up to four hours in an eight-hour workday; she would need to shift positions at will; she would need to take unscheduled breaks at least three to four times per day for 30 minutes; she can lift and carry up to 10 pounds occasionally; and she can use her hands and arms 20 percent of the time to reach, grasp, turn, or twist objects. [Tr. 653-54]. Dr. Cox further opined that Plaintiff would be absent from work more than four times per month and would not be physically capable of performing full-time work on a sustained basis. [Tr. 654].

The ALJ found Dr. Cox's opinion was not entitled to controlling weight because his treatment notes did not contain clinical findings to support the functional limitations assessed,

particularly those regarding Plaintiff's ability to sit, stand, walk, use her upper extremities, or concentrate. [Tr. 25]. For these reasons, the ALJ gave Dr. Cox's opinion "limited weight." [*Id.*]. The ALJ, instead, gave "considerable weight" to two nonexamining state agency physicians, Birch Duong, M.D., and Carolyn Parrish, M.D. [Tr. 24]. In June 2013, at the initial level of the administrative proceedings, Dr. Duong concluded that Plaintiff could perform medium work with occasionally climbing, kneeling, crouching, and crawling. [Tr. 24, 66-68]. In September 2013, at the reconsideration level, Dr. Parrish adopted Dr. Duong's postural limitations but limited Plaintiff to light work with no concentrated exposure to pulmonary irritants or wetness. [Tr. 24, 81-83]. The ALJ observed that the opinions were based on a review of all available evidence, the state agency physicians' knowledge of the disability program and its requirements, and were consistent with Plaintiff's overall conservative treatment and relatively benign examination findings. [Tr. 24]. Dr. Parrish's opinion, however, received "somewhat more weight" because it better coincided with the combined effect of Plaintiff's impairments, particularly her COPD. [*Id.*].[2]

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other substantial evidence in the case record, it must be given "controlling weight." 20 C.F.R. § 416.927(c)(2). When an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that

---

[2] The ALJ also noted that the record included medical opinions related to an earlier filing from 2011, but that the opinions were only entitled to "some weight" in so far as they demonstrated Plaintiff's long-term functioning but were otherwise of limited probative value since they preceded the application date in this case. [Tr. 25-26].

7

supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. § 416.927(c)(1)-(6).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. § 416.927(c)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996). Nonetheless, the ultimate decision of disability rests with the ALJ. *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 992 (6th Cir. 2007).

Plaintiff contends that the ALJ failed to identify the evidence that was inconsistent with Dr. Cox's opinion and did not properly assess the regulatory balancing factors, resulting in the ALJ's failure to give "good reason" for assigning the opinion limited weight. [*Id.*]. Because Dr. Cox was Plaintiff's long time treating physician, was familiar with all of Plaintiff's impairments, and based his opinion on personal examination findings, Plaintiff submits that Dr. Cox's opinion is well-supported and consistent with the evidence, which the ALJ failed to appreciate. [*Id.* at 16-17].

The Court disagrees. In reaching this conclusion, the Court first notes that prior to addressing and weighing Dr. Cox's opinion, the ALJ provided a thorough and detailed discussion of the medical evidence, emphasizing many of Dr. Cox's examination findings. [Tr. 19-25]. The ALJ's discussion provides context to his later conclusion that Dr. Cox's opinion was not entitled to controlling weight. *See Burton v. Berryhill*, No. 3:16-CV-240-CCS, 2018 WL 327763, at *6 (E.D. Tenn. Jan. 8, 2018) (in rejecting plaintiff's contention that the ALJ did not identify the

8

medical evidence at odds with his treating physician, "Plaintiff fails to appreciate the ALJ's discussion of the evidence prior to weighing the medical opinions of record"). Second, the Court finds the ALJ's discussion of the evidence likewise explains how the ALJ arrived at his conclusions that Dr. Cox's treatment notes did not support the functional limitations he assessed, particularly the limitations in sitting, standing, walking, upper extremity use, and concentration.

At the outset of the RFC determination, the ALJ properly recognized that Dr. Cox was Plaintiff's primary care physician since 2000, and he treated Plaintiff for chronic back pain, restless legs syndrome, COPD, low blood pressure, and complaints of fatigue, memory and concentration problems, dizziness, and vertigo. [Tr. 20-23]. Despite complaints of chronic back pain, the ALJ observed the record did not contain any imaging studies of Plaintiff's back or other joints to establish the presence of degenerative joint or disc changes. [Tr. 20]. A February 2014 bone density scan, however, did reveal 79 percent predicated peak bone mass in the lumbar spine, 74 percent predicated peak bone mass in the left femur, and 70 percent predicated peak bone mass in the right femur, consistent with osteopenia and increased facture risk. [Tr. 20, 680]. Given Plaintiff's decreased bone mass in her legs and lumbar spine, the ALJ reasoned that Plaintiff should be limited to light work with occasional postural activities. [Tr. 20].

The ALJ also noted that Dr. Cox's records contained very few detailed musculoskeletal examinations aside from right hip pain with rotation, slight tenderness to palpation of the lumbar spine, and tenderness over the left lateral epicondyle. [Tr. 20, 660, 795]. Otherwise, Dr. Cox consistently observed normal extremity findings on examination and he did not prescribe pain medication for daily use. [Tr. 20, 664, 724, 736, 755, 760, 772, 801]. In addition, Plaintiff reported some improvement in her right hip pain with steroid use, supporting a finding that Plaintiff's symptoms were generally manageable with conservative treatment. [Tr. 20, 662]. The ALJ found

9

the foregoing, in combination with Plaintiff's osteopenia symptoms, normal gait and upper extremity strength generally exhibited on examination, and conservative treatment for pain complaints, was not only consistent with Plaintiff's RFC, but the evidence also detracted from Plaintiff's testimony that she had problems lifting, would be unable to stand or walk for more than a few minutes, and spent most of her time lying down. [Tr. 20].

As to Plaintiff's restless leg syndrome, the ALJ observed that Dr. Cox reported in September 2013 that Plaintiff's symptoms improved with the medication Sinemet. [Tr. 21, 662, 782]. Consistent with Dr. Cox's notation, the ALJ cited to Plaintiff's testimony in which she explained that her medications reduced her leg pain and cramps significantly, such that her symptoms only occurred a few nights per week. [Tr. 21]. As a result, the ALJ concluded that Plaintiff's pain, muscle spasms, occasional poor sleep, but admitted improvement with medication, would reasonably limit Plaintiff to light work with occasional kneeling, crouch, and crawling. [*Id.*]. The ALJ also relied on consultative examiner Christopher Brooks, M.D., who found that Plaintiff exhibited weakness in her right knee secondary to pain, as well as absent ankle reflexes and problems with balance and orthopedic maneuvers, but no involuntary muscle movement or changes in sensation. [Tr. 21, 623]. The ALJ concluded that Dr. Brooks' examination findings were consistent with limitations of occasional climbing of ramps, stairs, ladders, ropes, and scaffolds. [Tr. 21].

Furthermore, the ALJ discussed why treatment records regarding Plaintiff's COPD was not inconsistent with the RFC assessed. [Tr. 21-22]. The ALJ noted Dr. Cox diagnosed Plaintiff with COPD in January 2010, and x-rays from 2012 and 2014 exhibited findings consistent with a history of COPD. [Tr. 21, 245-72, 433, 743]. Despite complaints of frequent cough and chest congestion, a pulmonary function test performed in June 2013 suggested mild-to-moderate

obstruction. [Tr. 21, 644-46]. And while Plaintiff required the use of supplemental oxygen at night and Dr. Cox from time-to-time noted pulmonary complaints and symptoms, the ALJ observed that the majority of Dr. Cox's treatment notes revealed normal lung function and respiratory effort on examination during the relevant period under review. [Tr. 21-22, 664, 720, 724, 773, 736, 744, 755, 783, 795, 801]. The ALJ also cited to Dr. Brooks' notation that Plaintiff exhibited normal breath sounds and did not become dyspneic during her examination. [Tr. 22, 622]. The ALJ concluded that Plaintiff's history of COPD, nighttime oxygen, and frequent upper respiratory symptoms warrant exclusion from exposure to wetness, humidity, or pulmonary irritants. [Tr. 22]. The ALJ also agreed with Dr. Cox that Plaintiff's poor oxygen levels while she slept could contribute to daytime fatigue as well as memory and concentration problems, thereby supporting a limitation of unskilled work that allows Plaintiff to be off-task five percent of the workday. [Tr. 22, 26, 737]. However, the ALJ additionally noted that once Plaintiff began using supplemental oxygen at night, Dr. Cox did not document any additional complaints thereafter. [Tr. 23, 719, 723, 732, 794, 801]. Therefore, the ALJ found that Plaintiff's generally normal findings on lung examination and her conservative treatment, which did not include hospitalization for acute exacerbations of COPD, did not warrant greater limitations than assessed. [Tr. 22].

Given the foregoing evidence, which the Court emphasizes is only a summarization of the more detailed discussion the ALJ provided of the record,[3] the Court finds that the ALJ's thoughtful and detailed analysis makes clear to any subsequent reviewer the ALJ's reasons for finding Dr.

---

[3] The ALJ additionally provided a discussion of Plaintiff's credibility, citing to daily living activities and a poor work history as factors that undermined the severity of her impairments. [Tr. 23-24]; *see Walters*, 127 F.3d at 531 ("[D]iscounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence.").

Cox's limitations in sitting, standing, walking, upper extremity use, and concentration unsupported and his opinion only entitled to limited weight. *See Pollard v. Astrue*, No. 1:11-CV-186, 2012 WL 2341814, at *5 (S.D. Ohio June 20, 2012) ("The ALJ must build an accurate and logical bridge between the evidence and his conclusion."), *adopted sub nom.*, No. 1:11CV186, 2012 WL 2931310 (S.D. Ohio July 18, 2012). In contending that the ALJ did not provide "good reason" for the weight assigned to Dr. Cox's opinion, Plaintiff merely offers her interpretation of the evidence. [*See* Doc. 22 at 16-17]. The ALJ, however, provided a reasonable and supported basis for his assessment of the evidence. "This Court does not conduct a *de novo* review and cannot remand a matter simply because it might have interpreted the evidence of record differently than the ALJ." *Brandon v. Astrue*, No. 1:09CV00857, 2010 WL 1444639, at *8 (N.D. Ohio Jan. 27, 2010), *adopted by*, No. 1:09CV857, 2010 WL 1444636 (N.D. Ohio Apr. 12, 2010).

Plaintiff further complains that the ALJ erred in deferring to the opinions of the nonexamining state agency physicians, Dr. Duong and Dr. Parrish, because at the time they rendered their opinions, they did not have access to a complete case record. [Doc. 22 at 17]. "[T]here will always be a gap between the time the agency experts review the record and give their opinion with respect to the Listing and the time the hearing decision is issued," but "absent a clear showing that the new evidence renders the prior opinion untenable, the mere fact that a gap exists does not warrant the expense and delay of a judicial remand." *Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 831 (6th Cir. 2009). "When an ALJ relies on a non-examining source who did not have the opportunity to review later submitted medical evidence," our appellate court "require[s] some indication that the ALJ at least considered these [new] facts before giving greater weight to an opinion that is not based on a review of a complete case record." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) (internal citations and quotation marks omitted). Here,

the ALJ did not blindly accept the state agency physicians' opinions but considered later generated evidence, including Dr. Cox's treatment notes and other medical opinions of record, in assessing Plaintiff's RFC.

Accordingly, the Court finds that substantial evidence supports the ALJ's assessment of Dr. Cox's opinion, and Plaintiff's arguments to the contrary are not well-taken.

### B. Limitations in Concentration, Persistence, and Pace

Plaintiff also argues that an RFC of simple, routine, and repetitive tasks does not accommodate her moderate limitations in concentration, persistence, and pace.

The opinion evidence of record concerning Plaintiff's mental limitations include two opinions from nonexamining state agency psychological consultants, Jenaan Khaleeli, Psy.D., and Rebecca Hansmann, Psy.D., and psychological consultative examiner, Stephen Cartwright, M.S. In relevant part, each medical source opined as follows with regard to Plaintiff's ability to sustain concentration, persistence, and pace.

In May 2013, at the initial level, Dr. Khaleeli concluded that Plaintiff was not significantly limited in her ability to carry out very short and simple instructions, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being districted by them, and make simple work-related decision. [Tr. 68-67]. Plaintiff, however, was found to be moderately limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, and complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. [*Id.*]. Dr. Khaleeli concluded that Plaintiff could concentrate and persist within the foregoing limitations. [Tr. 70]. In September

13

2013, at the reconsideration level, Dr. Hansmann concurred with Dr. Khaleeli and opined identical limitations. [Tr. 84-86]. Finally, in April 2013, Mr. Cartwright performed a consultative examination, concluding that Plaintiff exhibited moderate-to-marked limitations in concentration and persistence depending on the degree of depression Plaintiff was experiencing on that particular day. [Tr. 628].

The ALJ assigned "great weight" to Dr. Khaleeli's and Dr. Hansmann's opinions, noting that their opinions were based on a review of all the available evidence and their knowledge of the disability program and its requirements. [Tr. 25]. The ALJ reasoned that their opinions were also consistent with Plaintiff's limited mental health treatment and observations made by Mr. Cartwright on examination. [*Id.*]. However, given the possible cognitive effect of Plaintiff's medical impairments, as discussed in regard to Dr. Cox's opinion above, the ALJ concluded that a limitation to unskilled work was warranted. [*Id.*]. As to Mr. Cartwright, his opinion received "substantial weight to the extent it supports a residual functional capacity for unskilled, low-stress work, . . . allowing the claimant to be off-task five percent of the workday." [*Id.*]. The ALJ found the opinion generally consistent with Plaintiff's presentation and performance on mental status examination. [*Id.*].

Relying on *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010), Plaintiff argues that an RFC of simple, routine, and repetitive tasks does not accommodate moderate limitations in concentration. [Doc. 22 at 18]. The Court finds Plaintiff's reliance on *Ealy* misplaced.

In *Ealy*, the Sixth Circuit Court of Appeals concluded that an RFC and hypothetical question to a vocational expert that included the limitations of "simple repetitive tasks and instruction" failed to accurately represent a medical opinion that assessed limitations of "simple, repetitive tasks *[for] [two-hour] segments over an eight-hour day where speed was not critical*."

594 F.3d at 516 (emphasis added). As later clarified in *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 436-37 (6th Cir. 2014), the problem in *Ealy* was that the RFC and hypothetical question "truncated the doctor's specific restrictions." Distinguishing *Ealy*, the *Smith-Johnson* Court found "the limitation to simple, routine, and repetitive tasks adequately conveys Smith–Johnson's moderately-limited ability 'to maintain attention and concentration for extended periods'" because "[u]nlike in *Ealy*, Dr. Kriauciunas did not place any *concrete functional limitations* on her abilities to maintain attention, concentration, or pace when performing simple, repetitive, or routine tasks." *Id.* at 437 (emphasis added). Our appellate court has more recently held that "[c]ase law in this Circuit does not support a rule that a hypothetical providing for simple, unskilled work is *per se* insufficient to convey moderate limitations in concentration, persistence and pace." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 635 (6th Cir. 2016).

Here, Plaintiff's RFC for simple, routine, and repetitive tasks coincides with the nonexamining state agency psychological consultants' opinions that Plaintiff is not significantly limited to in her ability to perform simple and low-level detailed tasks. In addition, Plaintiff's RFC does not conflict with the moderate limitations they assessed as they "did not place any concrete functional limitations on her abilities to maintain attention, concentration, or pace when performing" simple and low-level detailed tasks. *See Smith-Johnson*, 579 F. App'x at 437. Likewise, Plaintiff's RFC is consistent with Mr. Cartwright's opinion that Plaintiff is, at a minimum, moderately limited in her ability to sustain concentration and persistence.

Plaintiff protests, however, that the ALJ essentially ignored Mr. Cartwright's opinion that Plaintiff was moderately-*to-markedly* limited in concentration and persistence despite purporting to fully adopt the opinion. [Doc. 22 at 18]. To the contrary, the ALJ assigned the opinion "substantial weight *to the extent* it supports a residual functional capacity for unskilled, low-stress

work, . . . allowing the claimant to be off-task five percent of the workday." [Tr. 25 (emphasis added)]. Moreover, the ALJ made allowances for Plaintiff's allegations of poor concentration when he elaborated in his decision that the medical evidence supported a finding that Plaintiff's COPD, poor sleep, and depression could cause some degree of concentration problems, therefore warranting the additional restriction that Plaintiff be limited to unskilled work and may be off-task five percent of the day. [Tr. 23, 26]. In any event, Plaintiff's RFC was not required to mirror Mr. Cartwright's opinion simply because the opinion received substantial weight. *See Newsome v. Astrue*, No. CIV. 11-1141-CJP, 2012 WL 2922717, at *6 (S.D. Ill. July 17, 2012) (rejecting plaintiff's argument that by giving great weight to a consultative examiner's opinion, the RFC assessment should have perfectly tracked the source's opinion).

Therefore, the Court finds that Plaintiff's RFC accommodates her moderate limitations in concentration contrary to Plaintiff's assertions.

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 21**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 23**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be directed to **CLOSE** this case.

ORDER ACCORDINGLY.

*/s/ Bruce Guyton*
United States Magistrate Judge